United States District Court
Southern District of Texas
**ENTERED**
July 15, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DINA ELIZABETH PAGE, | § | |
| Plaintiff. | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-04435 |
| ANDREW SAUL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Plaintiff Dina Elizabeth Page ("Page") seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Before me, with the consent of the parties, are competing motions for summary judgment filed by Page and Defendant Andrew Saul, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 17, 19.

### BACKGROUND

Page filed an application for disability insurance benefits under Title II of the Act, alleging disability as of June 11, 2015. Page's earnings record shows that she remained insured for purposes of Title II until December 31, 2015 (the "Date Last Insured"). Page's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held a hearing and found Page was not disabled during the period between June 11, 2015, and

December 31, 2015 (the "Relevant Period").[1] Page filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The Commissioner's decision to deny social security benefits is reviewed by the federal courts to determine whether (1) the Commissioner applied the proper legal standards, and (2) the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance." *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). "To be sure, this is not a high threshold." *Calhoun v. Saul*, No. CV 18-9574, 2020 WL 1904006, at *1 (E.D. La. Apr. 17, 2020). "Judicial review is to be deferential without being so obsequious as to be meaningless." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986).

"[A] claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (internal quotation marks, citation, and emphasis omitted). To determine if a claimant is disabled, the ALJ uses a sequential, five-step approach:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the

---

[1] Because Page's alleged onset date is June 11, 2015, and she was insured until December 31, 2015, the parties agree that Page must establish that she became disabled during the Relevant Period in order to be eligible for disability benefits under Title II of the Act.

claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

"The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Id*. (quotation marks and citation omitted). "Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ("RFC")." *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (quotation marks, brackets, and citation omitted). "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Id*.

"The [Commissioner's] decision must stand or fall with the reasons set forth in the ALJ's decision." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). *Post hoc* rationalizations for an agency decision are not to be considered by a reviewing court. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). "The reviewing court may not reweigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. Conflicts in the evidence are for the Commissioner, not the courts, to resolve." *Pennington v. Comm'r of Soc. Sec. Admin.*, No. 3:16-CV-230, 2017 WL 4351756, at *1 (S.D. Tex. Sept. 29, 2017) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).

## THE ALJ'S DECISION

The ALJ found at step one that Page had not engaged in substantial gainful activity since June 11, 2015.

The ALJ found at step two that Page had the following severe impairments: major depressive disorder, generalized anxiety disorder, panic disorder without agoraphobia, chronic obstructive pulmonary disease, morbid obesity, axonal neuropathy, and peripheral sensory neuropathy.

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments during the Relevant Period.

Prior to consideration of step four, the ALJ assessed Page's RFC, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant must be allowed to sit for 5 minutes after every 30 minutes of standing or walking. The claimant can occasionally climb ramps and stairs but can never climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, crouch, kneel, and crawl. The claimant can have occasional exposure to extreme heat. The claimant can never work at unprotected heights or around dangerous moving machinery. The claimant can understand, remember, and carry out detailed, but not complex, tasks in a work environment free of fast paced production requirements.

Dkt. 13-3 at 26 (footnotes omitted). At step four, the ALJ found that Page is incapable of performing past relevant work as a sales clerk, an assistant manager, or a stock clerk because the demands of her past work would exceed her RFC.

At step 5, the ALJ considered Page's RFC, age, education, and work experience in conjunction with the Medical Vocational Guidelines to determine if there was any other work she could perform. At the time of the ALJ's hearing, Page was 46 years old, had an 11th-

grade education, and was able to communicate in English. Based on the relevant factors, the ALJ concluded that Page was "not disabled" and that she "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id*. at 31. Specifically, the ALJ accepted the vocational expert's testimony that Page could still perform occupations such as garment sorter (Dictionary of Occupational Titles ("DOT") 222.687-014) and laundry sorter classifier (DOT 361.687-014). Accordingly, the ALJ determined that Page was not disabled during the Relevant Period and was not entitled to benefits.

## DISCUSSION

Page argues that "the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to develop the record." Dkt. 18 at 10. I disagree.

The Fifth Circuit has made clear that "the court may reverse the ALJ's decision if the claimant can show that '(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff.'" *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (quoting *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)). I will address each prong of this test in turn.

### A. THE ALJ ADEQUATELY DEVELOPED THE RECORD

"It is the duty of the administrative law judge to develop the facts relative to a claim for benefits fully and fairly." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "To determine whether the ALJ fully and fairly developed the record, we ask whether the record contained sufficient evidence for him to make an informed decision." *Hernandez v. Astrue*,

269 F. App'x 511, 515 (5th Cir. 2008). "So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Id.*

Page asserts the following bases for finding that the ALJ failed to adequately develop the record: (1) "the lack of [medical] opinions containing functional limitations" and (2) "the state agency consultants stating that there is insufficient evidence to determine functional limitations." Dkt. 18 at 10. I will address each basis, one-by-one.

### 1. The Lack of Medical Opinions

The ALJ assigned little weight to the state agency consultants because the consultants found "there was insufficient evidence to evaluate [Page] and did not assign any functional limitations." Dkt. 13-3 at 29. The ALJ assigned little weight to the opinion of the only treating physician, Dr. Liang Lu, because "it was rendered two years after the relevant period, and there was no indication or evidence the opinion dated back to the amended alleged onset date or date last insured." *Id.* Consequently, the ALJ determined Page's RFC without the guidance of any medical opinion.

Page does not dispute the ALJ's decision to assign these opinions little weight. Instead, Page argues that the lack of a medical opinion supporting the ALJ's decision triggered the ALJ's duty to fully and fairly develop the record.

"Under the regulations and our case law, the determination of [a claimant's RFC] is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012). *See also Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985) ("The ALJ is responsible for assessing the medical evidence and determining the claimant's [RFC]."). The ALJ determines a claimant's RFC by looking at the entirety of the medical evidence, testimonial evidence,

6

and other evidence in the record. *See Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016); 20 C.F.R. § 404.1545(a)(1). "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (footnote omitted). "[W]here no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id. See also Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (holding that the ALJ's determination of the claimant's RFC to perform a modified level of light work was "based on substantial evidence even without . . . a medical opinion").

I find that the ALJ's determination of Page's RFC is based on substantial evidence even without a medical opinion. "This is so because, although there is no statement from a medical source describing the types of work that [Page] is capable of performing, the ALJ's [RFC determination] is supported by substantial evidence." *Gonzales*, 2016 WL 107843, at *9. Some examples of the medical evidence the ALJ specifically referenced and cited in support of his RFC are as follows:

> (1) some treatment records indicate Page exhibited full strength and full range of motion in all extremities while other treatment records indicate that she exhibited decreased strength in the lower extremities (4/5 strength in proximal lower extremities, 3/5 in ankles, and 2/5 in great toe);
>
> (2) she did not use an assistive device for ambulation;
>
> (3) she ambulated without difficulty and could perform tandem walking;
>
> (4) she did not have abnormal respiratory exams;

7

>
> (5) other than slightly reduced strength in the lower extremities and edema, Page's physical exam results were within normal limits;
>
> (6) Page's mental status exam results showed the claimant displayed a depressed mood with congruent effect, but otherwise the mental status exam results were within normal limits;
>
> (7) she demonstrated logical and goal directed thought process with normal thought content;
>
> (8) she denied she experienced suicidal/homicidal ideation; and
>
> (9) she displayed good insight, intact judgment, intact memory, and intact concentration.

The ALJ also provided citations to additional evidence that further supports his decision. *See* Dkt. 13-8 at 21 (noting that Page's rehabilitation potential by continuing aquatic therapy was "good"); Dkt. 13-9 at 102–04 (noting that Page entered the pool for physical therapy via a ladder several times); Dkt. 13-10 at 12 (stating that Page's activity level is "4.5/10" and noting that she goes grocery shopping and runs errands); *id.* at 15 (finding no abnormalities in Page's physical examination); Dkt. 13-11 at 8 (finding, based on Page's general health examination, no abnormalities, that she was well-developed/well-nourished, no edema or cyanosis in her extremities, and that her psychological status was "mood/affect appropriate").

The ALJ considered Page's testimony in conjunction with the medical evidence in making his RFC determination. Some examples of the testimonial evidence the ALJ considered in making his RFC determination are as follows: (1) she can cook and perform some chores, such as vacuum and wash dishes; (2) she can drive short distances; (3) she can shop for groceries; and (4) she can sit for 30 minutes to one hour and stand or walk for 30 minutes to one hour. However, the ALJ appropriately found Page's statements about the

intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and the other evidence in the record.[2] *See Anthony*, 954 F.2d at 295 (explaining that "subjective evidence need not be credited over conflicting medical evidence").

As previously discussed, my task is to scrutinize the record to determine whether substantial evidence supports the ALJ's decision. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, No. 4:12-CV-878-A, 2014 WL 1255316, at *5 (N.D. Tex. Mar. 26, 2014). I find that substantial evidence supports the ALJ's RFC determination. Each part of the RFC is supported by either the medical evidence from before the Date Last Insured or Page's testimonial evidence. Furthermore, the ALJ appropriately found that Page's statements about the severity of her limitations were not credible, which the Fifth Circuit has found to be a probative factor in finding substantial evidence without any medical opinion. *See Gutierrez*, 2005 WL 1994289, at *7 (explaining that substantial evidence supported the ALJ's determination that claimant could perform a modified level of light work, even without any medical opinion, because the medical evidence, the claimant's hearing testimony, and the

---

[2] For example, Page alleged she had difficulty handling objects, but all the medical evidence from before the Date Last Insured repeatedly indicates she had full strength and feeling in her upper extremities. In addition, Page reported that she used a walker, but all of the medical evidence from before the Date Last Insured repeatedly indicates that she did not need a walking assistance device, ambulated without difficulty, and could even tandem walk.

ALJ's adverse credibility determination against the claimant all supported finding substantial evidence). Because the record contained sufficient evidence for the ALJ to make an informed decision, the ALJ did not err in making the RFC determination without a medical opinion. *See Joseph-Jack v. Barnhart*, 80 Fed. App'x 317, 318 (5th Cir. 2003) ("We also reject [the claimant's] argument that because the record was devoid of [a RFC] assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."); *Lascola v. Saul*, No. CV 19-154, 2020 WL 1878163, at *18 (E.D. La. Mar. 31, 2020) ("While it is the ALJ's duty to develop the record, it remains the claimant's burden at Step 4 to establish disability. She has not presented any medical evidence in support of her alleged impairments, despite having had the opportunity to do so."); *Gonzales*, 2016 WL 107843, at *10 ("[T]he court holds that the ALJ did not err in determining the RFC without the opinion of a medical source as to [the claimant's] ability to work, and that substantial evidence supports the ALJ's conclusion."); *Banks v. Colvin*, No. 13-189-JJB-RLB, 2014 WL 4660847, at *6 n.4 (M.D. La. Sept. 17, 2014) ("While the ALJ has a duty to fully and fairly develop the record, the 'claimant has the burden of proof in establishing his disability. If the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence.'") (quoting *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)).

### 2. The State Agency Consultant's Findings

As mentioned above, the state agency consultant found "there was insufficient evidence to evaluate [Page] and did not assign any functional limitations."[3] Dkt. 13-3 at 29. In light of the consulting physician's opinion, Page asserts that the ALJ must have also had insufficient evidence to determine Page's functional limitations. I disagree for several reasons.

First, the ALJ is ultimately responsible for assessing the medical evidence and determining the claimant's RFC. *See Perez*, 777 F.2d at 302; *Taylor v. Astrue*, 706 F.3d at 602–03. No precedent says the ALJ loses his authority to determine a claimant's RFC based on the available evidence simply because a consulting physician believes the evidence is insufficient to evaluate the claimant's limitations. Second, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quotation marks, brackets, and citation omitted). *See also Reyes v. Sullivan*, 915 F.2d 151, 154 (5th Cir. 1990) ("The findings of a state agency are not binding on the ALJ."). Contrary to the consultant's conclusion, the ALJ found that there was sufficient evidence to evaluate Page's RFC, which is a finding supported by substantial evidence, as explained above. Third, the consulting physician did not have the benefit of considering Page's hearing testimony, which provided critical evidence in the ALJ's evaluation of her functional limitations. Fourth, I have no reason to believe the

---

[3] A second consultant came to the same conclusion. However, the second consultant provided an incorrect date last insured, which indicated that the consultant was not evaluating Page's medical evidence from the Relevant Period. Consequently, the second consultant's opinion is of no consequence to my evaluation.

standard for what constitutes sufficient evidence to a consulting physician is the same as the standard the ALJ applies in evaluating the evidence of a claimant's limitations. Finally, despite finding the evidence insufficient to evaluate Page's functional limitations, the consultant definitively opined that Page was not disabled based on the available evidence, which is consistent with the ALJ's RFC finding. Consequently, the consultant's opinion did not rob the ALJ of his authority to determine Page's RFC. *See Swan v. Colvin*, No. CV 15-60-JWD-EWD, 2016 WL 5429669, at *15 (M.D. La. Aug. 30, 2016) (finding substantial evidence supported the ALJ's opinion despite a state agency consultant advancing that the record contained "insufficient evidence [to] evaluate the claim").

### B. PAGE FAILED TO SHOW PREJUDICE

Even assuming that the ALJ erred by failing to fully develop the record, I may only reverse the ALJ's decision if Page demonstrates that she was prejudiced by this failure. *See Gutierrez*, 2005 WL 1994289, at *8. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quoting *Kane*, 731 F.2d at 1220). Page makes no such showing.

Page argues that the ALJ's failure to develop the record resulted in prejudice because she "was harmed by the ALJ's failure to obtain a medical opinion regarding her functional limitations from the relevant time period."[4] Dkt. 18 at 15. Page further argues that she was

---

[4] The ALJ's decision not to order a consultative examination is discretionary, and the ALJ in this case had a sufficient evidentiary basis for rendering the determination without such an examination. *See Gutierrez*, 2005 WL 1994289, at *8 (finding that the ALJ had a sufficient evidentiary basis for rendering the decision without a consultative examination despite there being no medical opinion in

prejudiced by the ALJ's failure to consider the "more severe findings in the record"[5] and the ALJ's reliance on his own "lay opinion"[6] in making his RFC determination. *Id.* I do not find any of these arguments persuasive at all. Page had the burden of showing *what* evidence could and would have been adduced through further development of the record and *how* that evidence may have altered the result. *See Brock*, 84 F.3d at 728. Page makes neither showing with her arguments. Instead, she simply asserts how additional evidence could have been adduced and then complains about the ALJ's evaluation of the existing record in making his RFC determination. This does not meet the requisite standard for showing prejudice. Page made no effort to identify any additional evidence while at the hearing, nor any additional evidence as a basis for a rehearing, and otherwise wholly failed to identify or produce any additional evidence that could have altered the result. *See Pearson v. Barnhart*, No. 1:04-

---

the record); *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987) ("The decision to require such an examination is discretionary. . . . [T]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.") (internal quotation marks and citation omitted).

[5] In support of this argument, Page explains that "[a]lthough . . . the ALJ need not discuss every piece of evidence, he may not ignore evidence that does not support his decision especially when that evidence is 'significantly probative.'" Dkt. 18 at 14 (quoting *Jefferson v. Barnhart*, 356 F. Supp. 2d 663, 675 (S.D. Tex. 2004)). I have looked at all of the medical evidence that Page references in support of this argument, and I find that the ALJ did not ignore any significantly probative evidence. Even if the ALJ had ignored significantly probative evidence in the record, such error would not be probative in showing prejudice because it does not relate to *what* evidence could and would have been adduced that was not already in the record or *how* that evidence may have altered the result.

[6] Because "the determination of [Page's RFC] is the sole responsibility of the ALJ[,] [w]hat [Page] characterizes as the ALJ substituting his [lay] opinion is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work." *Taylor v. Astrue*, 706 F.3d at 602–03 (citation omitted). *See also Joseph-Jack*, 80 Fed. App'x at 318 ("We also reject [the claimant's] argument that because the record was devoid of [a RFC] assessment by a medical source, the ALJ was not competent to assess her RFC. It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.").

13

CV-300, 2005 WL 1397049, at *4 (E.D. Tex. May 23, 2005) (finding a lack of prejudice because the plaintiff did "not proffer[] additional evidence that would have been produced had [the ALJ] re-contacted [the] plaintiff's treating physicians" or "articulate[] any reason suggesting that the additional evidence (if any) might have led to a different decision"). During the hearing, Page's counsel was even asked if there was any additional evidence he wished to provide, and he responded, "No." Dkt. 13-3 at 46. Thus, the ALJ's supposed failure to adequately develop the record can only be categorized as "a direct result" of Page's own inaction and "not any error made by the ALJ." *McKim v. Colvin*, 2014 WL 4161782, at *4 (M.D. La. Aug. 19, 2014) (finding that the ALJ was not to be blamed for the lack of medical evidence where the claimant clearly failed to fulfill his obligation to provide evidence of disability).

Consequently, I find that Page has not shown she has suffered any prejudice.

C. **THE ALJ DID NOT HAVE A DUTY TO RE-CONTACT DR. LU**

Page argues that the ALJ had the duty to "re-contact [Dr. Lu] and determine what date Dr. Lu's opinion related back to" because it was ambiguous as to whether it related back to before the Date Last Insured. Dkt. 18 at 17. In support of this argument, Page cites *Pearson*, which states that remand is appropriate "for failure to re-contact a treating physician when (1) the physician's records are inconclusive or otherwise inadequate to receive controlling weight, (2) the record contains no other medical opinion evidence based on personal examination or treatment, and (3) the claimant proves prejudice." 2005 WL 1397049, at *4. I am not persuaded.

Page fails to show she was prejudiced because she does not show what evidence could and would have been adduced had the ALJ re-contacted Dr. Lu. As explained above, "[t]o establish prejudice, a claimant must show that he '*could and would* have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d at 1220) (emphasis added). Page argues that Dr. Lu's opinion *could* relate back to the Relevant Period, more than two years prior, but she does not provide any basis or argument to show his opinion *would* relate back. Simply asserting that it is theoretically possible that some piece of additional evidence *could* be adduced by re-contacting a treating physician is insufficient without showing that the additional evidence *would* be adduced. *See id.* Consequently, Page's assertion that re-contacting Dr. Lu *could* show that his opinion related back to the Relevant Period is insufficient without providing any evidence or reasonable basis that re-contacting Dr. Lu *would* show that his opinion related back. *See McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) ("Records describing a claimant's current condition cannot be used to support a retrospective diagnosis of disability absent evidence of an actual disability during the time of insured status."); *Brock*, 84 F.3d at 728.

The evidence seems to show the very opposite of what Page asserts—that Dr. Lu's opinion *could not* relate back to the Relevant Period. Each question in Dr. Lu's opinion is phrased in the present tense, which unambiguously indicates that the questions related to Page's condition at the time Dr. Lu filled out the questionnaire, not two years prior to that time. Additionally, the medical evidence from the Relevant Period, as described above, is inconsistent with the severity of Page's condition described in Dr. Lu's opinion. Page even admits in her brief that her condition has worsened in the last two years, which strongly

15

implies that Dr. Lu's assessment *could not* and *would not* relate back. Furthermore, Page has not directed my attention to any treatment notes authored by Dr. Lu during the Relevant Period; arguably, such notes could have corroborated Page's claim that Dr. Lu's opinion related back. Because Page has not shown what additional evidence *could* or *would* have been adduced had the ALJ re-contacted Dr. Lu, she has not fulfilled her burden of showing prejudice. *See Pearson*, 2005 WL 1397049, at *4 (finding a lack of prejudice because the plaintiff did "not proffer[] additional evidence that would have been produced had [the ALJ] re-contacted plaintiff's treating physicians").

Even if Page were able to show she was prejudiced by the ALJ's decision to refrain from re-contacting Dr. Lu, Page would still be unable to show the ALJ's duty to re-contact Dr. Lu was triggered because the record contained sufficient evidence to make an informed RFC determination. *Pearson* explains that "the duty to re-contact is triggered when the evidence is insufficient to make an *informed* determination, not when the evidence is insufficient to make a *favorable* determination." *Id.* As explained above, substantial evidence supported the ALJ's decision even without re-contacting Dr. Lu. Thus, there was sufficient evidence in the record for the ALJ to make an informed decision.

For these reasons, the ALJ's duty to re-contact Dr. Lu was not triggered.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 17) is **DENIED** and Defendant's Motion for Summary Judgment (Dkt. 19) is **GRANTED**.

SIGNED in Houston, Texas, this 15th day of July, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE